[No. 31465. Department One. August 23, 1951.]

RICHARD L. DAVIS, *Appellant,* v. RANDOLPH PALMER, *as Administrator, Respondent.*[1]

*Robert F. Murray,* for appellant.

*Southard & Palmer,* for respondent.

HILL, J.—An unlawful detainer action was dismissed by the trial court on the theory that the plaintiff had not sufficiently pursued his remedies in a prior action for specific performance between the parties. We, too, conclude that the unlawful detainer action should have been dismissed, for numerous and sundry additional reasons. The trial

[1] Reported in 235 P. (2d) 151.

court's conclusion and ours can have meaning only against the background of the facts.

E. Burt Brockway and Richard L. Davis entered into an unacknowledged agreement April 29, 1946, whereby Brockway agreed to erect a building on an eighteen-foot strip of land in the business district of Coulee City and to lease the premises to Davis, within 120 days of that date, for a three-year period at eighty-five dollars a month, with an option of two additional years. Brockway erected the building and tendered a lease September 6, 1946, but one which limited the use that could be made of the premises to the business of retailing cigars, tobaccos, and confectionery. Davis refused to accept the lease with that restriction and promptly commenced what will be hereinafter referred to as "the specific performance action," alleging the agreement as above stated and that Brockway refused to give Davis possession of the premises on the agreed terms, and asking that the court order specific performance of the agreement to lease.

The trial court, after calling attention to the fact that no question had been raised as to the sufficiency of the written agreement between Brockway and Davis to satisfy the requirements of the statute of frauds, found that the insertion of the restriction in the lease was in bad faith, and that Brockway had wrongfully refused to execute a lease in accordance with the agreement and had likewise wrongfully refused to give Davis possession of the property. The decree in that action was entered August 26, 1947, and directed that Brockway execute a lease to Davis in accordance with the terms of the agreement of April 29, 1946, the term to be for three years from August 27, 1946 (computed on the basis of 120 days from the date of the agreement), with a renewal option for a period of two additional years, and concluded with this paragraph:

"That the plaintiff [appellant here] is entitled to recover and is hereby awarded from the defendant [respondent here] the sum of $85.00 per month for a period from September 6, 1946, until possession of said premises are relinquished to the plaintiff by the defendant, said $85.00 per month to be applied as rent from and after the date on which the plaintiff is given possession of said premises; and

that the $50.00 heretofore paid by the plaintiff to the defendant is to be applied upon the rent due on said premises from and after such time as plaintiff is given possession thereof. That no rental is due or shall accrue under said lease against the plaintiff for any of the period of said lease during which defendant withholds possession of said premises from the plaintiff."

Brockway did not execute the lease, and continued to occupy the premises himself until at least May 6, 1948, and possibly July 1st.

Davis made no effort to secure the aid of the court to enforce its decree in the action for specific performance. He merely bided his time until April 28, 1948, apparently on the theory that the damages were accumulating each month. On that date he commenced the statutory unlawful detainer action. His summons, which was in the form applicable to that type of action (Rem. Rev. Stat., § 818 [P.P.C. § 55-17], stated that the relief sought was

". . . to recover the possession of the premises hereinafter described; and judgment for twice the amount of rent due and the damages that have been and will be occasioned to plaintiff by your unlawful detention of the said premises,"

and concluded with a description of the eighteen-foot strip hereinabove referred to.

The complaint, however, did not even suggest a desire to have possession of the premises, but prayed for damages in the amount of six thousand one hundred twenty dollars, which is double the eighty-five-dollar rental for the full thirty-six months of the three-year lease (which still had approximately sixteen months to run when the unlawful detainer action was started).

Brockway tendered possession to Davis July 13, 1948, and of this tender Davis testified:

"He came in with both gentlemen and asked if I wanted the building, and I said it has been twenty-two months and I sold the stuff I bought to put in there, and the influx of people was all gone, the work was slacking down; and I didn't tell him I wouldn't take it. I said I would call my attorney."

It is conceded that Davis did not accept that tender.

The case was tried April 20, 1949, almost a year after the complaint was filed and nine months after Brockway tendered possession to Davis.

The trial court dismissed the unlawful detainer action, stating that the decree entered in the specific performance action

". . . was in the nature of an interlocutory order in that it did not finally dispose of the action, and only determined matters immediately before the Court raised in those proceedings and that there were further judicial actions to be disposed of which were essential to a final determination of the rights of the parties. This decree was a judgment which was conditioned upon acts to be done by the parties, and would not become final until the fulfillment or non-fulfillment of the conditions specified therein."

Davis appealed, and during the pendency of the appeal Brockway died and the administrator of his estate was substituted as respondent.

At the outset, we would say that the trial court might well have dismissed the unlawful detainer action because Brockway did not fall within any of the six classifications of those who may be guilty of unlawful detainer, as set out in Rem. Rev. Stat., § 812 [P.P.C. § 55-5], on which the action was based.

█ But, assuming that such an action could be maintained against Brockway, an examination of the record discloses that Davis not only did not allege but also did not prove the giving of any of the notices required by the various subparagraphs of Rem. Rev. Stat., § 812 (except the first, which deals with a tenant who continues in possession after the expiration of his term, which has no application here), as a condition precedent to the action. No question on this point was raised at the trial of the unlawful detainer action, but in the absence of proof of such notice any judgment of unlawful detainer would have been erroneous. *State ex rel. Robertson v. Superior Court,* 95 Wash. 447, 164 Pac. 63.

If what Davis wanted was possession of the premises, he would not have had to resort to an unlawful detainer action, as he could have secured that relief by application to the court to enforce its decree in the specific performance action. The court, on proper application, could have enforced its own decree and could have compelled not only the execution of the lease but also Brockway's performance under it by the surrender of possession to Davis. Merely to compel the execution of the lease and not compel its enforcement would be to sacrifice substance to form.

However, it is clear, in the light of his own pleadings and testimony, that Davis had no desire to be in possession of the property at the time the unlawful detainer action was commenced, and that he resorted to an unlawful detainer action instead of a direct action to collect the damages awarded him by the decree in the specific performance action because of the lure of the double damages which are possible in such an action. Rem. Rev. Stat., § 827 [P.P.C. § 55-35].

The dismissal is justified under the rule that a party will not be allowed to harass his adversary capriciously when a court that entered a decree is amply able to enforce it. *Pennington v. Gibson,* 57 U. S. (16 Howard) 65, 14 L. Ed. 847.

Even if we were to regard this as an action based on the final decree in the specific performance action, it would have to be dismissed. It is clear from the decree in that action that it was contemplated that Davis would go into actual possession of the premises, and that the eighty-five dollars a month was allowed as damages on the condition or understanding that it would ultimately be applied as rental.

The failure or refusal of a party to perform as directed by a court's decree does not give rights to an independent action at law except in those cases where the decree provides solely for the recovery of a specific sum of money subject to no conditions. *New York Life Ins. Co. v. Stokes,* 247 Ala. 639, 25 So. (2d) 783; *Du Bois v. Seymour,*

152 Fed. 600, 11 Ann. Cas. 656; 30 C. J. S. 1019, Equity, § 619; 2 Freeman on Judgments (5th ed.) 2223, § 1066; Restatement of the Law of Judgments 178, § 46, comment "a". Freeman, *supra,* states the rule to be that "before an equity decree will support an action at law it must be one imposing an unconditional personal liability for a definite sum."

The decree in the specific performance action (assuming it to be a final decree), upon which Davis based his damages in his unlawful detainer action, awarded him eighty-five dollars for each month he was kept out of possession, but allocated the money to the payment of rent for the property. Davis acquired no right to recover the money so awarded him by an action at law, and certainly not in an action for unlawful detainer.

We have not discussed the specific ground referred to by the trial court in its order of dismissal, that the decree in the specific performance action was interlocutory and not final. We are satisfied that the fact that further action by the court might be necessary to enforce that decree, did not render it interlocutory as that term is generally used. In view of the other and more obvious reasons for dismissal of the action, we express no opinion upon the question of whether the decree in the specific performance action was interlocutory or final.

The judgment of dismissal is affirmed.

SCHWELLENBACH, C. J., BEALS, DONWORTH, and FINLEY, JJ., concur.